UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL ST. ANGELO,

       Plaintiff,

v.                                    Case No. 3:16-cv-1580-J-34MCR

JULIE JONES AND
KEVIN D. JORDAN,

       Defendants.

## ORDER OF DISMISSAL WITHOUT PREJUDICE

Plaintiff Michael St. Angelo, an inmate of the Florida penal system, initiated this action on December 28, 2016, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1) with exhibits (P. Ex.) under 42 U.S.C. § 1983. In the Complaint, St. Angelo complains about the conditions of confinement at Union Correctional Institution (UCI). He names the following individuals as the Defendants: (1) Julie Jones, Secretary of the Florida Department of Corrections (FDOC), and (2) UCI Warden Kevin D. Jordan. He asserts that the FDOC transferred him from open population status at the Reception and Medical Center (RMC) to UCI on May 18, 2016, to an ADA wheelchair-accessible[1] cell in V dormitory's close management transitional care unit (CM-TCU). He states the FDOC denied him proper medical care and participation in various activities and programs due to his housing location in CM-TCU. According to St. Angelo, the FDOC advised him that he would remain at UCI's CM-TCU

---

[1] Americans with Disabilities Act (ADA).

until ADA-compliant bed space became available at another FDOC institution. As relief, he requests that the Court direct the FDOC to provide him adequate care and accommodations for his serious health needs and worsening disabilities. He also seeks monetary damages.

The Prison Litigation Reform Act requires the Court to dismiss this case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Additionally, the Court must read Plaintiff's pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519 (1972).

"A claim is frivolous if it is without arguable merit either in law or fact." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001) (citing Battle v. Central State Hosp., 898 F.2d 126, 129 (11th Cir. 1990)). A complaint filed in forma pauperis which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. Neitzke v. Williams, 490 U.S. 319, 328 (1989). Section 1915(e)(2)(B)(i) dismissals should only be ordered when the legal theories are "indisputably meritless," id. at 327, or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). "Frivolous claims include claims 'describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'"

Bilal, 251 F.3d at 1349 (quoting Neitzke, 490 U.S. at 328). Additionally, a claim may be dismissed as frivolous when it appears that a plaintiff has little or no chance of success. Id.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, the Eleventh Circuit "'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriquez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). More than conclusory and vague allegations are required to state a cause of action under 42 U.S.C. § 1983. See L.S.T., Inc., v. Crow, 49 F.3d 679, 684 (11th Cir. 1995) (per curiam); Fullman, 739 F.2d 553, 556-57 (11th Cir. 1984). "Moreover, 'conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal.'" Rehberger v. Henry Cty., Ga., 577 F. App'x 937, 938 (11th Cir. 2014) (per curiam) (citation omitted). In the absence of a federal constitutional deprivation or violation of a federal

right, Plaintiff cannot sustain a cause of action against the Defendants.

St. Angelo asserts that he suffers with a variety of medical conditions and/or issues, including: long-term hemorrhoids, a protruding navel hernia, faulty pacemaker, congestive heart failure, post-traumatic stress disorder, high anxiety, severe depression, knee and back pain, swollen feet and legs, shortness of breath, chest pains, blurry vision, a burning esophagus, constipation and uncontrollable urination. See Complaint at 5-6. He states that, due to his ongoing health issues and disabilities, he is wheelchair-bound and needs the following FDOC special passes: pusher, cushion, low bunk, no work/lifting/recreation/exercise. See id. at 6. According to St. Angelo, while housed in general population at RMC, he attended medical and mental health call-outs; the RMC mental health staff later advised him that the FDOC would transfer him to an institution that could accommodate his health needs and disabilities; the FDOC transferred him on May 18, 2016, to an ADA wheelchair-accessible cell in V dormitory's CM-TCU at UCI. See id. He asserts that he complained about his status as a general population inmate who was housed in a CM-TCU dormitory, but never received "a valid answer." Id. According to St. Angelo, UCI officers "simply advised" him that they would wait until ADA-compliant bed space at a general population TCU institution became available. See id. at 8.

To the extent that St. Angelo asserts that the Defendants violated his federal constitutional rights by failing to transfer him to another institution with an ADA-compliant cell in a general population TCU, the Court advises St. Angelo that "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State[.]" Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (footnote omitted); see also Barfield v. Brierton, 883 F.2d 923, 936 (11th Cir. 1989) (citing Meachum v. Fano, 427 U.S. 215 (1976)) (stating "inmates usually possess no constitutional right to be housed at one prison over another").

Insofar as St. Angelo asserts that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by denying him access to proper medical care, the Eleventh Circuit has explained the requirements for an Eighth Amendment violation.

> "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." Farmer, 511 U.S. at 832, 114 S.Ct. at 1976 (internal quotation and citation omitted).[2] Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane conditions of confinement. Id. However, as noted above, only those conditions which objectively amount to an "extreme deprivation" violating contemporary standards of decency are subject to Eighth Amendment scrutiny. Hudson, 503 U.S. at 8-9, 112 S.Ct. at 1000.[3] Furthermore, it is only a prison official's

---

[2] Farmer v. Brennan, 511 U.S. 825 (1994).

[3] Hudson v. McMillian, 503 U.S. 1 (1992).

> subjective deliberate indifference to the substantial risk of serious harm caused by such conditions that gives rise to an Eighth Amendment violation. Farmer, 511 U.S. at 828, 114 S.Ct. at 1974 (quotation and citation omitted); Wilson, 501 U.S. at 303, 111 S.Ct. at 2327.[4]

Thomas v. Bryant, 614 F.3d 1288, 1306-07 (11th Cir. 2010).

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citation and internal quotations marks omitted).

Brown, 387 F.3d at 1351.

Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted

---

[4] Wilson v. Seiter, 501 U.S. 294 (1991).

deliberate indifference." Richardson, 598 F.3d at 737 (setting forth the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing Farrow, 320 F.3d at 1245).

> In Estelle[5], the Supreme Court established that "deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106, 97 S.Ct. 285; Farmer, 511 U.S. at 835, 114 S.Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott[6] that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor,[7] 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

---

[5] Estelle v. Gamble, 429 U.S. 97 (1976).

[6] McElligott v. Foley, 182 F.3d 1248 (11th Cir. 1999).

[7] Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000).

Farrow, 320 F.3d at 1245-46. St. Angelo has not alleged facts sufficient to state a claim under the Eighth Amendment in that he has not shown that any named medical or corrections personnel was deliberately indifferent to his serious medical needs.

As to any complaints about the Defendants' negligent acts and unprofessional conduct in denying him access to medical care or failing to respond to St. Angelo's medical complaints, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks and citation omitted). While Plaintiff's allegations may suggest medical malpractice as to UCI medical personnel, "[a]ccidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the victim is a prisoner.'" Harris v. Coweta Cty., 21 F.3d 388, 393 (11th Cir. 1994) (citing Estelle, 429 U.S. at 106). Consequently, the allegedly negligent conduct of which St. Angelo complains does not

rise to the level of a federal constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action.

According to the Corrections Offender Network, Inmate Population, see http://www.dc.state.fl.us/offenderSearch, St. Angelo is no longer housed at UCI; he resides at Suwannee Correctional Institution Annex. As chronicled in St. Angelo's exhibits submitted with his Complaint, see P. Exs., the FDOC is aware of his mental and physical health needs and advised St. Angelo that he was not an open-population inmate while on inpatient status in TCU at UCI, see P. Ex., Doc. 1-1 at 70, and was on the waiting list to be transferred to TCU at another institution that could provide an ADA-compliant bed, see id. at 87, 97. St. Angelo may access sick call and request additional health care and effective medication and/or management to deal with his issues, and the FDOC advised him of such available avenues. See id. at 118. It appears the FDOC was responsive to St. Angelo's health needs while he was housed at UCI and took steps to ensure his ultimate transfer to another facility. Moreover, the FDOC advised St. Angelo that Dr. Lopez and the multi-disciplinary services team would make any decisions relating to changes in his clinical care. See id. at 116.

The United States Supreme Court has stated:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At

>    most[,] it is medical malpractice, and as such the proper forum is the state court . . . .

Estelle, 429 U.S. at 107; Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether [UCI medical staff] should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."). "Nor does a simple difference in medical opinion as to [St. Angelo's] diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted).

To the extent St. Angelo is requesting that this Court direct the FDOC and/or the Inspector General's Office to investigate the alleged ongoing injustices, this Court does not have the authority to grant such relief. Nevertheless, as to St. Angelo's interest in addressing any ongoing violations, he may seek such relief by initiating a grievance pursuant to the prison's administrative grievance procedures. In doing so, he may also request an appointment with a mental health care provider or guidance counselor to address any mental health issues that concern him. Although the grievance process does not permit an award of money damages, the grievance tribunal has the authority to take responsive action. See Booth v. Churner, 532 U.S. 731 (2001) (holding that prisoners must exhaust their administrative remedies

regardless of the relief they seek, i.e., whether injunctive relief or money damages, even though the latter is unavailable pursuant to the administrative grievance process). Additionally, St. Angelo may contact his classification officer to inquire about any concerns he may have about his conditions of confinement, including transportation to any RMC medical appointments.

As to St. Angelo's supervisory claims against Secretary Jones and Warden Jordan, the United States Court of Appeals for the Eleventh Circuit has stated:

> "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at 1234 (internal quotation marks and citation omitted).[8] "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).
>
> "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Cottone, 326 F.3d at 1360 (citation omitted).[9] "The

---

[8] Gonzalez v. Reno, 325 F.3d 1228 (11th Cir. 2003).

[9] Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003).

> deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," Gonzalez, 325 F.3d at 1235, or that a supervisor's "custom or policy . . . resulted in deliberate indifference to constitutional rights," Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991).

Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008); see Keith v. DeKalb Cty., Ga., 749 F.3d 1034, 1047-48 (11th Cir. 2014). In sum,

> To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights,[10] (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights,[11] (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it,[12] or (4) a

---

[10] See Goebert v. Lee Cty., 510 F.3d 1312, 1327 (11th Cir. 2007) ("Causation, of course, can be shown by personal participation in the constitutional violation.") (citation omitted).

[11] See Goebert, 510 F.3d at 1332 ("Our decisions establish that supervisory liability for deliberate indifference based on the implementation of a facially constitutional policy requires the plaintiff to show that the defendant had actual or constructive notice of a flagrant, persistent pattern of violations.").

[12] See Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008) ("Douglas's complaint alleges that his family informed Yates [(an Assistant Warden)] of ongoing misconduct by Yates's subordinates and Yates failed to stop the misconduct. These allegations allow a

> history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct. See id. at 1328–29 (listing factors in context of summary judgment).[13] A supervisor cannot be held liable under § 1983 for mere negligence in the training or supervision of his employees. Greason v. Kemp, 891 F.2d 829, 836–37 (11th Cir. 1990).

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (per curiam). Thus, any supervisory claims against Jones and Jordan fail because St. Angelo has failed to allege any facts suggesting that the Defendants were personally involved in, or otherwise causally connected to, the alleged violations of his federal statutory or constitutional rights.

In light of the foregoing, this case will be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B), without prejudice to St. Angelo's right to refile his claim under 42 U.S.C. § 1983 with sufficient factual allegations to support a claim under § 1983 against the proper Defendants, if he elects to do so.[14] The Clerk of Court will be directed to provide a civil rights complaint form

---

reasonable inference that Yates knew that the subordinates would continue to engage in unconstitutional misconduct but failed to stop them from doing so.").

[13] West v. Tillman, 496 F.3d 1321 (11th Cir. 2007).

[14] Plaintiff should note that pro se litigants are subject to the same law and rules of court that govern other litigants who are represented by counsel. See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989). All filings with the Court must be made in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Middle District of Florida.

and Affidavit of Indigency form to St. Angelo. If St. Angelo chooses to refile a civil rights complaint in this Court to address any alleged federal constitutional violations relating to mistreatment, he must submit a fully completed civil rights complaint form. Additionally, in completing the form, he must write legibly and comply with Local Rule 1.05(a).

Therefore, it is now

**ORDERED:**

1. This case is hereby **DISMISSED WITHOUT PREJUDICE**.

2. The Clerk of Court shall enter judgment dismissing this case without prejudice, terminating any pending motions, and closing the case.

3. The Clerk shall send a civil rights complaint form and an Affidavit of Indigency form to Plaintiff. If he elects to refile his claims, he may complete and submit the proper forms. Plaintiff should not place this case number on the forms. The Clerk will assign a separate case number if Plaintiff elects to refile his claims. In initiating such a case, Plaintiff should either file a fully completed Affidavit of Indigency (if he desires to proceed as a pauper) or pay the $400.00 filing fee (if he does not desire to proceed as a pauper).

4. The Clerk shall provide St. Angelo with a copy of Local Rule 1.05.

5. The Clerk shall terminate any pending motions and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 4th day of April, 2017.

MARCIA MORALES HOWARD
United States District Judge

sc 4/4
c:
Michael St. Angelo, FDOC #169794